Alan M. Winsor and Ellen C. Winsor v. Commissioner.
Winsor v. Commissioner
Docket No. 60405.
United States Tax Court
T.C. Memo 1959-78; 1959 Tax Ct. Memo LEXIS 172; 18 T.C.M. (CCH) 383; T.C.M. (RIA) 59078; April 23, 1959
*172 Raymond C. Baldes, Esq., 27 State Street, Boston, Mass., for the petitioners. Chester M. Howe, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioners' Federal income tax for the year 1952 in the amount of $12,862.64. Practically all of this deficiency resulted from respondent's determination that "the casualty loss deduction claimed in [petitioners'] 1952 income tax return for termite damage done to [their] residences at 4 Irving Road and 4 Pelham Road, Weston, Massachusetts in the amounts of $7,500.00 and $15,000.00, respectively, does not represent an allowable deduction as a casualty loss under Section 23(e)(3) of the Internal Revenue Code of 1939." The correctness of this determination is here at issue. Findings of Fact The parties have stipulated very few of the facts pertinent to this case. We find those facts to be as stipulated. Petitioners are husband and wife who have lived since April 1952 at 4 Pelham Road, Weston, Massachusetts. They filed a joint income tax return, on the cash basis of accounting, for the calendar year 1952 with the director of internal revenue for the district *173 of Massachusetts. In July 1939 petitioners purchased a residence at 4 Irving Road, Weston, Massachusetts, for $7,000. This property is sometimes hereinafter referred to as the Irving Road property. After they purchased this property petitioners made substantial capital improvements thereon, and as of 1952 their adjusted cost basis with regard to this property was $10,757.90. The house located thereon was of CapeCod construction. The house had a living room, kitchen, dining room, den, and lavatory on the first floor. The living room was about 23 by 13 feet with built-in bookcases. On the second floor there were three bedrooms and a full bath. There was a full basement in the house with a knotty pinepaneled game room with asphalt tile flooring, constructed in 1943. The entire lot was enclosed with a cedar fence. The library-den was built in December 1950 by enclosing a screened porch on the west side of the house into which a door opened from the living room. The floor of the porch consisted of hard pine boards, about 3 inches by one-half inch with a one-half inch space between them, the boards being nailed to 2- by 4-inch stringers. There was a roof on the porch supported by *174 the side of the house and two posts at the western end which rested on cement pieces. The 2- by 4-inch stringers which supported the hard pine slats came out of the sill of the house to another 2- by 4-inch stringer which rested on the cement posts and there was an air space beneath the floor. The floor of the new room consisted of plywood, which was nailed securely to the hard pine boards and the 2- by 4-inch stringers supporting them, insulating paper was placed over the plywood, and asphalt tiles were laid on top of the paper. Three sides were fully enclosed with wooden frame construction, and 8 thermopane glass windows, each 3 feet square, in mullion bases were installed, 4 on the west side, 2 on the north, and 2 on the south. A door frame was constructed and a door placed in the south side. The shingles on the west side of the house now enclosed were stripped, the facia boards on the posts were removed, and the entire interior paneled in pine and the ceiling constructed of Acousticon. This work was done by the petitioner Alan and his father who was a carpenter. Petitioners, having bought another and a larger house at 4 Pelham Road, Weston, in April 1952, moved out of the Irving *175 Road property in that month. Being anxious to sell the latter property, Alan went over the entire house after all of the furniture had been taken out of it. He refinished or had refinished all of the oak floors throughout the entire house, and also the floor of the den which had been constructed in 1950. He also went over and refinished the knotty pine paneling in the basement in order to make it as attractive as possible, and also the knotty pine paneling in the den. Prior to October 1952 Alan saw no evidence of termites or termite damage on or within the Irving Road property. In January 1952 petitioners became interested in acquiring a larger house located at 4 Pelham Road, Weston, Massachusetts, hereinafter sometimes referred to as the Pelham Road property. After inspecting it on several occasions, petitioners agreed to purchase this property the latter part of January 1952 and acquired title to it on April 1, 1952. They immediately moved from the Irving Road property to the Pelham Road property. They financed a part of the purchase price of the Pelham Road property by a temporary loan which they planned to repay from the proceeds of the sale of the Irving Road property when *176 it was sold. Around the first of January 1952 Alan made unsuccessful attempts to sell the Irving Road property without the aid of real estate brokers. Later in that month he listed this property with brokers. For some time it was listed with such brokers at a gross asking price of $25,000, but was not sold. On October 1, 1952, John H. Underhill and his wife were prevailed upon by a real estate broker to look at this property in spite of their protestations that they were not interested in buying it at the price asked. When they looked at the property they found evidence of the presence of and damage by termites, and called this to the attention of petitioners. A few days later Underhill asked an exterminator expert to inspect the Irving Road property. He found damage from termites in the plywood under the tile floor of the side porch which had been converted into a den in December 1950, in the foundation wall, in the stairs leading from the first floor to the basement, in the pine paneling on one wall of the basement, and in the outside steps leading from the back door. The only structural replacement necessary was the installation of a cement step in place of the bottom step of *177 the stairway to the basement, which had to be cut off. The exterminator expert treated the premises with chemicals "on a five-year guarantee, with an annual inspection included in that guarantee." At or about this time the Underhills informed petitioners that they were willing to buy the Irving Road property with the termite damage in it, but would pay no more than $17,500. Petitioners accepted this offer and sold this property in October 1952 to Underhill for $17,500. Termites began to infest the Irving Road property in the fall of 1950. The damage to this property by termites discovered in October 1952 was done between December 1950 and October 1952. The fair market value of this property prior to its infestation and damage by termites was $22,000. Its fair market value after the discovery of its infestation and damage by termites on or about October 1, 1952, was $17,500. The Pelham Road property was infested by termites as early as 1944, when termites were found in the soil on the south wall and in a screen embedded in the wall. However, petitioners saw no evidence of termites when they examined the property prior to its purchase and were assured by the owners that it was *178 in sound condition. Not until October 8, 1952, when they were converting a side porch into an enclosed library, did they discover that this property had been infested and damaged by termites. This porch had an upstairs screened porch above it, supported by two large 4- by 6-inch or 6- by 8-inch posts. When Alan's father, who was doing the carpentering work, tore off the facing of one of the posts he discovered that it "was completely eaten off from a point about five feet above the level and nothing was holding up the porch on that end." He also discovered that the other post and the main still were damaged by termites. These posts, the main sill, and the floor of the porch were replaced. Thereafter petitioners called in an exterminator expert who found a general infestation of termites on the property. Termite shelter tubes had been built up to the rear foundation walls to the sills. Active termites were found in the furring strips in the basement game room, in the basement stairs, and in the garage, and under the brick walk between the house and the garage. Some of the furring strips had been eaten from the basement floor to the ceiling above. The exterminator expert made the extensive *179 and intensive treatments to the property which were necessary. Petitioners made repairs to the Pelham Road property necessitated by the termite damage. In connection with these repairs and the treatment of the property by the exterminataor expert they expended a total amount of $1,078.91. Petitioners brought suit in the Superior Court of Middlesex County, Massachusetts, against their vendors of the Pelham Road property, alleging misrepresentations on the part of the vendors to the effect that the house was in good condition, whereas the vendors knew that the house was infested with termites which had caused and were causing great damage. As a result of the compromise of this action petitioners received from their vendors the sum of $3,578.91. The Pelham Road property had been infested by termites for at least 5 years prior to October 1952. Opinion KERN, Judge: In this case the petitioners owned two homes in the taxable year and both of them were damaged by termites. The question presented is whether petitioners are entitled to deductions from gross income on account of such damages as casualty losses pursuant to the provisions of section 23(e)(3) of the Internal Revenue Code *180 of 1939. [1]
In Technical Information Release-142, dated March 13, 1959 (4 months after the trial of this case), respondent has stated his present policy of allowing deductions on account of such losses when "the termite infestation and subsequent damage * * * occurred in relatively short periods of time," and of disallowing such deductions when "the termite infestation and subsequent damage occurred over periods of several years." It seems obvious to us on the record presented herein that the deduction on account of termite damage to the Pelham Road property of petitioners comes within *181 the ambit of Leslie C. Dodge, 25 T.C. 1022; United States v. Rogers, 120 Fed. (2d) 244; and Fay v. Helvering, 120 Fed. (2d) 253, and that it was properly disallowed as a casualty loss on the authority of those cases. The answer to the similar question with regard to the Irving Road property of petitioners is not as apparent but, after a careful study of the record before us and the pertinent cases, we have concluded that the deduction on account of termite damage to this property comes within the exception recognized in Leslie C. Dodge, supra, at 1026 (see also Buist v. United States, 164 Fed. Supp. 218), and should be allowed in the amount indicated by us in our Findings of Fact. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - (3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. No loss shall be allowed as a deduction under this paragraph if at the time of the filing of the return such loss has been claimed as a deduction for estate tax purposes in the estate tax return.↩